## CHADWICK MACHINERY CO. v. KELLEY et al.

### No. 2352.

Court of Civil Appeals of Texas. Beaumont. May 11, 1933.

O. B. Freeman, of Dallas, for appellant.

R. R. Smith, of Jourdanton, and Wm. H. Russell, of San Antonio, for appellees.

WALKER, Chief Justice.

Many parties and issues were involved in this suit in the lower court, but the appeal is before us merely with Trinity Farm Gravel Company et al. as appellants, and C. M. Kelley et al. as appellees. On the 28th day of September, 1929, appellees and appellants entered into the following written contract:

"State of Texas, County of Bexar

"Whereas, the Trinity Farm Gravel Company of Dallas, Texas, has entered into a contract with the Texas State Highway Department for the construction of a certain section of road or highway in Demmit County, and known as project No. ——— and

"Whereas, C. M. Kelly of San Antonio, Texas is the owner of one Northwest ¾ yard clam shell earth excavator and is desirous of using said machine to perform that part of the said above contract, which calls for the loading and unloading of materials to be used in the construction of said road. Therefore, this agreement, witnesseth.

"1. That the said C. M. Kelly agrees to furnish the said Northwest ¾ yard clam shell earth excavator on the location of said work at Carrizo Springs, in Demmit County, Texas, and to perform such work of loading and unloading materials under the direction of said Trinity Farm Gravel Company, its officers or agents, subject to and accordance with the hereinafter terms.

"2. The Trinity Farm Gravel Company agrees to pay the said C. M. Kelly at Carrizo Springs, Texas, the sum of Fifteen Cents (15¢) per cubic yard for each and every cubic yard of material for which the State Highway Department allows the said Trinity Farm Gravel Company an estimate, and for which the said Trinity Farm Gravel Company is paid by the State Highway Department. The said Kelly is not to receive any pay for the movement of any material for which the Trinity Farm Gravel Company is not paid by said State Highway Department.

"3. The Trinity Farm Gravel Company agrees to pay the wages of the operators and helpers on said Northwest ¾ yard clam shell earth excavator and to carry said employees of the said Kelly on the gravel company payroll and provide for said employees compensation insurance for their protection, and the said premiums for said compensation insurance, wages and monies paid to the said necessary operators, helpers and other employees of the said Kelly are to be deducted from any amount due the said Kelly under the terms of said contract.

"4. The Trinity Farm Gravel Company agrees to furnish and pay for the necessary oil, gasoline and/or other fuel or lubricants necessary to keep the said machine in good working order and to provide for and pay for the necessary repairs and said sums so expended are to be deducted by the said Trinity Farm Gravel Company from any amount due the said Kelly under the terms of this contract.

"5. The Trinity Gravel Company agrees to pay the said Kelly such sums of money as shall be due him monthly as, and when, the said Gravel Company receives its monthly estimate check from the State Highway Department of Texas.

"6. It is estimated that there are about three thousand cubic yards of earth stripping to be removed by the said excavator and for which the said C. M. Kelly agrees to accept and the said Trinity Farm Gravel Company agrees to pay at Carrizo Springs, Texas, ten cents (10¢) per cubic yard for each and every cubic yard of stripping for which the Trinity Farm Gravel Company receives an estimate check from the State Highway Department

of Texas, said Kelley having the option of refusing to strip any part or all of such estimated quantity.

"Witness our hands, this 28 day of September, A. D. 1929."

Contemporaneous with the execution of this contract, the parties entered into an oral contract to the effect that, if it became necessary to loosen the earth so that the same could be loaded more efficiently with the machine, the cost of "shooting" the earth, thus to be loosened, with dynamite or other explosives, would be paid by appellants. In order to carry out the terms of the written contract, it became necessary to do some "shooting." The only issue between appellants and appellees was as to which party should pay for the "shooting." Appellants contend that this cost was necessarily assumed by appellees under the written contract. Appellees contend that it was expressly excluded from the written contract by the parties by a construction given by the parties thereto and by the terms of the oral contract was assumed by appellants. The point is before us upon appellants' proposition that the reception of the oral evidence was in violation of the rule that a written contract cannot be varied by a parol contemporaneous agreement. The jury found the following facts: Appellants and appellees entered into a verbal contract to the effect that appellants would, at their own expense, do such shooting as might be necessary to be done, in connection with the moving of earth formation and materials in connection with the road building contract; and that appellants and appellees, at the time of the execution and delivery of the written contract, construed it as not binding appellees to do necessary "shooting" of materials. On the issue thus stated the testimony of Mr. W. H. Russell, a lawyer of sixteen years' experience, who represented appellees in the execution of the contract involved, testified as follows: "Mr. Kelley was signing the contract * * * and he passed the contract over, and the thought occurred to me with reference to the shooting * * *. I brought the point up for discussion and Mr. Kelley said that the engineer on the job down there had assured him that shooting would not be necessary. I asked him if he was willing to bank on that and he said he was not, and so I turned to Mr. Gurley and I said, 'If there is any shooting who is going to do it?' They had a discussion about the price of fifteen cents and whether he could shoot it at that price, and approximately how much shooting would be necessary. And Mr. Gurley (representing appellants) and Mr. Kelley neither one apparently from their discussion thought that shooting would be necessary and I said, 'Well, under those circumstances I want to do some more writing,' and I picked the contract up and started to interline in it and Mr. Gurley said, 'You have already interlined the contract and I would rather you did not interline any more. We can have a gentlemen's agreement about that.' I asked Mr. Kelley if he was satisfied with the gentleman's agreement and he said he was. I said, 'This contract is silent on the subject of shooting and I would like to have it understood that we here now construe the contract not to obligate Mr. Kelley to do any shooting or any sledging. There is no provision in there that he must do it, so we will construe it that he does not have to do that.' And Mr. Gurley said that that would be satisfactory. So then Mr. Kelley said, 'All right, we have that gentleman's agreement.' So that contract was passed on back to Mr. Gurley."

## Opinion.

The reception of the evidence of the parol agreement was not error. While it is the general rule that, in the absence of fraud and mistake, if a writing is complete upon its face and unambiguous, parol evidence is not admissible to contradict, vary, alter, add to, or detract from the terms of the instrument, yet where the written instrument does not evidence the complete contract, parol evidence, consistent with the written instrument, is admissible to show the full agreement. Now in this case the parties expressly agreed that the written instrument was silent on the issue of "shooting" and upon that construction of the written instrument agreed that the cost of "shooting" should be paid by appellants. The parol evidence in no way varied, contradicted, altered, or added to the terms of the written instrument, but was merely evidentiary upon the entire contract.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

Affirmed.